## MODIFIED OPINION

No. 92,432

MARK WELDON KARGUS, *Appellant*, v. State of Kansas, *Appellee*.

(169 P.3d 307)

Original opinion filed July 27, 2007. See 284 Kan. 625, 162 P.3d 818). Modified opinion filed October 15, 2007.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, argued the cause, and *Brent Getty* and *Heather Cessna*, of the same office, were with him on the briefs for appellant.

*Steven J. Obermeier,* assistant district attorney, argued the cause, and *Paul J. Morrison,* district attorney, and *Phill Kline,* attorney general, were with him on the briefs for appellee.

*Jean Gilles Phillips, Elizabeth Seale Cateforis,* and *Alice C. White,* of University of Kansas School of Law, of Lawrence, were on the brief for *amicus curiae* The Paul E. Wilson Defender Project.

The opinion of the court was delivered by

LUCKERT, J.: This case raises two principal questions. First, does a criminal defendant whose felony conviction and sentence have been affirmed by the Court of Appeals have a right to effective assistance of appellate counsel when filing a petition requesting this court's discretionary review of the Court of Appeals' decision? Second, if a defendant does have such a right in a direct appeal, is the right denied when counsel fails to file a petition after the defendant has requested that a petition be filed? To resolve the second question, we must decide whether the traditional analysis for ineffective assistance of counsel, a modified version of that test, or an entirely different test will be applied. Our analysis requires us to consider several ancillary issues regarding the procedure and remedy to be applied.

A review of the procedural history of this case explains more fully the context of the issues. In 1997, Mark Weldon Kargus was charged with aggravated kidnapping and rape. The district court appointed counsel who withdrew after Kargus retained private counsel. Following a jury trial, Kargus was convicted as charged and sentenced. The Court of Appeals affirmed his convictions on direct appeal in *State v. Kargus,* No. 82,486, unpublished opinion filed June 2, 2000. A petition seeking review of that decision was not filed.

In March 2003, Kargus filed a pro se K.S.A. 60-1507 motion in which he argued, *inter alia,* that he received ineffective assistance of appellate counsel in the direct appeal because his attorney failed to file a petition for review despite Kargus' request that one be filed. The district court found that a petitioner does not have a constitutional right to counsel for the purpose of pursuing a discretionary review in the Kansas Supreme Court and summarily denied Kargus' K.S.A. 60-1507 motion.

Kargus appealed to the Court of Appeals. A Court of Appeals panel determined Kargus' right to effective appellate counsel on direct appeal extended to the petition for review phase of the appeal. Based upon Kargus' argument that his appellate counsel was ineffective for failing to file a petition for review after Kargus had asked his attorney to do so, the Court of Appeals determined the representation was ineffective and prejudicial because "filing a petition for review would have been successful at least to the extent of exhausting State remedies and thereby preserving the issue for federal habeas review." *Kargus v. State*, No. 92,432, unpublished opinion filed June 2, 2006, slip op. at 3. The panel observed that there was no evidence received from Kargus' appellate counsel, despite Kargus' allegation that he personally requested his attorney file a petition for review. Thus, the Court of Appeals determined that the district court should have conducted an evidentiary hearing on this matter. The case was reversed and remanded for an evidentiary hearing to determine whether an untimely petition for review should be permitted.

The State filed a petition for review, asking this court to resolve an apparent conflict between the holding in *Kargus* and other Court of Appeals' decisions, both published and unpublished. In particular, the State pointed to a decision of a different Court of Appeals panel in *Swenson v. State*, 35 Kan. App. 2d 709, 135 P.3d 157 (2006). *Swenson* was filed 2 weeks before *Kargus*. The *Swenson* panel agreed that the defendant had the right to effective assistance of counsel in seeking review of a Court of Appeals' decision. 35 Kan. App. 2d at 726. However, the *Swenson* panel employed a different analysis than that used by the *Kargus* panel when determining whether the failure to file a petition resulted in ineffective assistance of counsel. The *Swenson* panel held that, even if the defendant's appellate counsel was deficient in failing to file a timely petition for review, the defendant failed to meet the prejudice prong of the test for ineffective assistance of counsel because the petition would not have been granted. 35 Kan. App. 2d at 726-27.

We granted the State's petition for review in this case and the defendant's petition for review in *Swenson v. State*, No. 94,207, this day decided.

On our review of the Court of Appeals' decision in this case, the State argues that we should adopt the *Swenson* panel's analysis and conclude that a defendant's claim of ineffective assistance of counsel must fail where the defendant cannot show prejudice by appellate counsel's failure to file a discretionary petition for review. The defendant and a brief of *amicus curiae*, filed by counsel representing the Paul E. Wilson Defender Project, argue there is a right to effective assistance of counsel in pursuing a petition for review and a failure to file a petition for review is either presumptively prejudicial or a structural error that automatically results in a determination of ineffective assistance of counsel.

## Right to Effective Assistance of Counsel

The first consideration is the question of law of whether Kargus had the right to effective assistance of counsel in pursuing discretionary review of the Court of Appeals' decision in his direct appeal. The district court ruled that there is no constitutional right to counsel in order to pursue a discretionary review before this court, citing *Foy v. State*, 17 Kan. App. 2d 775, 844 P.2d 744, *rev. denied* 252 Kan. 1091 (1993).

In *Foy*, the appellant argued his counsel was ineffective for failing to inform him that he could petition for review to this court. The *Foy* court observed that this court's decision whether to review a Court of Appeals' decision is discretionary. 17 Kan. App. 2d at 775-76; see K.S.A. 20-3018(b); K.S.A. 2006 Supp. 22-3602(e); Supreme Court Rule 8.03 (2006 Kan. Ct. R. Annot. 62). It further noted that, in *Wainwright v. Torna*, 455 U.S. 586, 587-88, 71 L. Ed. 2d 475, 102 S. Ct. 1300 (1982), the United States Supreme Court held that a criminal defendant could not be deprived of effective assistance of counsel for retained counsel's failure to file a timely application for review in the Florida Supreme Court because the defendant had no constitutional right to counsel in a discretionary appeal. *Foy*, 17 Kan. App. 2d at 775-76.

In addition to *Wainwright*, the *Foy* court cited *Robinson v. State*, 13 Kan. App. 2d 244, 250, 767 P.2d 851, *rev. denied* 244 Kan. 738 (1989), where it was held that the dismissal of the defendant's appeal of the denial of his K.S.A. 60-1507 motion due to the failure

of his attorney to timely perfect the appeal did not violate the defendant's due process rights because the constitutional right to counsel does not exist in state postconviction proceedings. *Foy*, likewise, held that the appellant did not have a constitutional right to counsel to pursue a discretionary review in the Kansas Supreme Court. Consequently, the panel held that Foy was not denied effective assistance of counsel when his attorney failed to file a petition for review or failed to let him know that he had the option to do so. 17 Kan. App. 2d 775, Syl.

Ten years later, this court overruled *Robinson* in deciding *Brown v. State*, 278 Kan. 481, 101 P.3d 1201 (2004), the case on which Kargus relies to argue that he has a right to counsel. In *Brown*, this court held that, although there is no constitutional right to appointed counsel to pursue a K.S.A. 60-1507 motion, there is a statutory right under certain circumstances to counsel for collateral attacks and such a right includes a right to have the effective assistance of counsel. 278 Kan. 481, Syl.; see K.S.A. 2006 Supp. 22-4522(e)(4).

The *Brown* court looked to other jurisdictions where courts held that some standard of competence is required by appointed counsel and quoted the following from *Cullins v. Crouse*, 348 F.2d 887, 889 (10th Cir. 1965):

" 'Although the right to counsel in a civil case is not a matter of constitutional right under the Sixth Amendment, counsel should be appointed in post conviction matters when disposition cannot be made summarily on the face of the petition and record. *When counsel is so appointed he must be effective and competent. Otherwise, the appointment is a useless formality.*' " *Brown*, 278 Kan. at 484.

This court agreed with the Tenth Circuit Court of Appeals' analysis.

In overruling *Robinson* and its progeny, this court held that, where there was a statutory right to counsel, there was a right that counsel be effective and competent. It was also pointed out that it would be impossible for Brown to obtain postconviction relief if he was not permitted to file his appeal out of time. Because Brown's counsel did not timely inform him of the right to appeal the denial of his K.S.A. 60-1507 motion, this court held he should be permitted to file his appeal out of time. 278 Kan. at 484-85.

In this case, the Court of Appeals implicitly expanded the *Brown* analysis to Kargus' case, observing that *"Foy's* analysis has changed since *Brown."* In support of this reasoning, the panel recognized that another unpublished Court of Appeals' decision, *Swarthout v. State*, Nos. 93,133 and 93,134, unpublished opinion filed May 13, 2005, relied on *Brown* and held that counsel's failure to file a petition for review denied Swarthout's statutory right to effective assistance of counsel.

In its petition for review, the State distinguishes *Brown* because it dealt with a defendant's appeal of the denial of his K.S.A. 60-1507 motion, whereas the present case deals with the discretionary review of a Court of Appeals' decision in a direct appeal from a conviction. The State further notes that nowhere in *Brown* did this court specifically state that we were overruling *Foy*.

While the State is correct that *Brown* did not overrule *Foy*, it is incorrect in implying that *Foy* must be overruled to reach the conclusion suggested by Kargus. The *Foy* panel considered only the issue of whether there was a constitutional right to counsel. The panel did not discuss a statutory right, and Kargus argues that, like the situation in *Brown*, he was statutorily entitled to effective assistance of counsel in pursuit of his petition for review. *Brown*, however, did not address the question now before us. In fact, no decision of this court specifically addresses the issue of whether there is a statutory right to counsel when filing a petition for review.

The determination of whether there exists a statutory right to counsel for the purpose of filing a petition for review requires construction of statutes relating to appellate procedure and appointment of counsel. "The interpretation of a statute is a question of law over which this court has unlimited review." *State v. Bryan*, 281 Kan. 157, 159, 130 P.3d 85 (2006). The general rules we apply when construing statutes are well settled:

"The fundamental rule of statutory construction, to which all other rules are subordinate, is that the intent of the legislature governs. An appellate court may consider various aspects of a statute in attempting to determine the legislative intent. The court must first look at the intent as expressed in the language of the statute. When the language is plain and unambiguous, an appellate court is bound to implement the expressed intent. Ordinary words are to be given their ordinary

meanings without adding something that is not readily found in the statute or eliminating that which is readily found therein. An appellate court must consider all of the provisions of a statute *in pari materia* rather than in isolation, and these provisions must be reconciled, if possible, to make them consistent and harmonious. As a general rule, statutes should be interpreted to avoid unreasonable results." *State v. McElroy,* 281 Kan. 256, Syl. ¶ 4, 130 P.3d 100 (2006).

In applying these rules to the question before us, we cannot look to one specific statute for the answer; no one statutory provision explicitly states whether a defendant has a right to counsel when seeking this court's review of a Court of Appeals' decision in a direct appeal of a felony conviction and sentence. However, there are several provisions which, when read together, lead us to the conclusion that there is such a statutory right.

First, K.S.A. 2006 Supp. 22-4503(a) provides that a defendant charged with a felony "is entitled to have assistance of counsel at *every stage* of the proceedings against such defendant." (Emphasis added.) K.S.A. 2006 Supp. 22-4505(b) makes it clear that this reference includes the right of indigent defendants to have the assistance of appointed counsel during a direct appeal. That statute directs that, after determining a felony defendant is not financially able to employ counsel, "the court shall appoint counsel from the panel for indigents' defense services or otherwise in accordance with the applicable system for providing legal defense services for indigent persons prescribed by the state board of indigents' defense services, to represent the defendant *and to perfect and handle the appeal.*" (Emphasis added.) K.S.A. 2006 Supp. 22-4505(b). Several other statutory provisions reference a defendant's right to appeal and the right to have appointed counsel, some in the context of imposing a duty upon the trial court to inform the defendant of those rights. See, *e.g.,* K.S.A. 22-3424(f) ("After imposing sentence in a case which has gone to trial on a plea of not guilty, the court shall advise the defendant of the defendant's right to appeal and of the right of a person who is unable to pay the costs of an appeal to appeal in *forma pauperis*"); K.S.A. 2006 Supp. 22-4505(a) (trial court "shall inform the defendant of such defendant's right to appeal the conviction to the appellate court having jurisdiction and

that if the defendant is financially unable to pay the costs of such appeal," the defendant may request appointed counsel).

These statutes do not explicitly mention petitions for review. Consequently, we must determine whether the legislature intended to provide the right to counsel for purposes of filing a petition for review when it granted the right to counsel during "every stage of the proceedings," K.S.A. 2006 Supp. 22-4503(a), and required judges to appoint counsel to "handle the appeal" for indigent defendants, K.S.A. 2006 Supp. 22-4505(b). Important to our consideration of this question is another statutory provision, K.S.A. 20-3018(b), which states that, when the Court of Appeals has initial jurisdiction, "[a]ny party aggrieved by a decision" of that court "may petition the supreme court for review within thirty (30) days after the date of such decision." Thus, while the determination of whether review will be granted is discretionary with this court, the right to petition for review is not qualified or contingent. See K.S.A. 20-3018(b); K.S.A. 2006 Supp. 22-3602(d). It is a right which is a part of "the appeal" and one of the stages in the proceedings to which the right to counsel attaches.

To construe these statutes otherwise, *i.e.,* to determine that the right to counsel terminates once the criminal defendant's appeal has been decided by the Court of Appeals, would lead to the unreasonable result that an indigent criminal defendant would be left to pursue his or her case pro se in the Kansas Supreme Court. If such was the intent, an appellate attorney would have the obligation merely to inform the defendant of the fact that his or her conviction has been affirmed by the Court of Appeals and that the defendant could pursue discretionary review on his or her own. See *Ex Parte Wilson*, 956 S.W.2d 25, 27 (Tex. Crim. 1997) (no constitutional or statutory right to counsel on discretionary appeal; counsel need only inform defendant of result of direct appeal and availability of discretionary review). Alternatively, if the conviction had been reversed and the State sought review, a defendant would be left to argue pro se why the Court of Appeals' decision was correctly decided. Clearly, however, the State's continuation of the appellate process would be a continuation of proceedings against the defendant. Moreover, whether the petition was filed by a de-

fendant or the State, the legislature clearly intended a defendant would have a right to be represented by counsel when a petition for review is granted by this court. That being so, it is difficult to surmise why the Kansas Legislature would intend to leave a criminal defendant without counsel in his or her efforts to petition for review. In fact, to read K.S.A. 2006 Supp. 22-4505(b) as providing a right to counsel in proceedings before the Court of Appeals but not in proceedings in which this court reviews a Court of Appeals' decision leads to an illogical result, and statutes are to be construed to avoid unreasonable results. *Pieren-Abbott v. Kansas Dept. of Revenue*, 279 Kan. 83, 89, 106 P.3d 492 (2005).

We conclude, therefore, that the Kansas Legislature intended that a defendant's right to counsel in the direct appeal of a felony conviction extends to all levels of the state appellate process, including the filing of the petition for review.

That statutory right to counsel includes the right to effective assistance of counsel. *Cf. Brown*, 278 Kan. at 484. We hold that Kargus, as a convicted felon who appealed directly from his conviction and sentence, had the statutory right to effective assistance of counsel when filing a petition for review in his direct appeal.

## Ineffective Assistance of Counsel

Based upon our conclusion that Kargus was entitled to have effective assistance of counsel in pursuing a petition for review in his direct appeal, the next step is to determine whether his appellate counsel was ineffective for failing to file a petition for review after Kargus had allegedly requested the filing. Before reaching this ultimate issue we must answer an antecedent question: What standard applies or what test is utilized to make a determination of ineffective assistance of counsel when the complaint is that counsel failed to file a petition for review?

As we have noted, the State argues we should employ a test that would require Kargus to establish that his appellate counsel's conduct caused him prejudice. To do so, the State argues Kargus must show his petition for review would have been granted.

The State's argument follows a traditional analysis of ineffective assistance of counsel claims that applies when it is alleged that

counsel committed specific errors during the course of a proceeding. Under this analysis, to establish denial of effective assistance of counsel, a defendant must show: (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness, and (2) the defendant was prejudiced. See *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 104 S. Ct. 2052, *reh. denied* 467 U.S. 1267 (1984); *Chamberlain v. State*, 236 Kan. 650, 656-57, 694 P.2d 468 (1985); see also *State v. Mathis*, 281 Kan. 99, 109-10, 130 P.3d 14 (2006); *State v. Smith*, 278 Kan. 45, 51-52, 92 P.3d 1096 (2004). The performance and prejudice prongs of this traditional *Strickland* ineffective assistance of counsel inquiry are each mixed questions of law and fact and, on appeal, require de novo review. *State v. Griffin*, 279 Kan. 634, 643, 112 P.3d 862 (2005).

Under the performance prong of the traditional *Strickland* test, a defendant must show that counsel's representation fell below an objective standard of reasonableness, considering all the circumstances. In making this determination courts apply a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Consistent with this presumption, judicial scrutiny of counsel's performance is highly deferential, and every effort is made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. *Bledsoe v. State*, 283 Kan. 81, 90, 150 P.3d 868 (2007).

Under the prejudice prong of the traditional *Strickland* ineffective assistance of counsel test, the defendant is required to establish prejudice by showing that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. 283 Kan. at 90.

The State suggests that because Kargus failed to establish a reasonable probability that his petition for review would have been granted, especially in light of what the Court of Appeals characterized on direct appeal as "overwhelming evidence," he failed to establish prejudice, and we must conclude he failed to meet his burden.

In response to this argument, Kargus does not focus on the merits of the prejudice argument but argues the failure to file a petition for review is presumptively prejudicial or, alternatively, that we should find structural error requiring automatic reversal. In making this argument, Kargus notes that the traditional *Strickland* prejudice analysis does not apply in circumstances where counsel fails to provide any assistance in a phase of the proceeding. Within the context of an appellate proceeding, a counsel's failure to provide any assistance arises typically because counsel fails to file a timely notice of appeal. The case law that has developed regarding the failure to file a notice of appeal explains Kargus' argument.

The leading case regarding the test for ineffective assistance of counsel when a direct appeal is not timely filed is *Roe v. Flores-Ortega*, 528 U.S. 470, 145 L. Ed. 2d 985, 120 S. Ct. 1029 (2000). *Flores-Ortega* arose after the defendant's counsel failed to timely file a notice of appeal even though she had stated at the sentencing hearing that she would do so. After counsel's failure to act, the defendant attempted to file a late notice of appeal, but it was rejected as untimely, and his efforts to secure state habeas relief were unsuccessful. The defendant then filed a federal habeas petition, alleging ineffective assistance of counsel based on his trial counsel's failure to file a notice of appeal after promising to do so.

The Court considered how to apply the traditional *Strickland* ineffective assistance of counsel test in this context. In doing so, it discussed both prongs of the *Strickland* analysis. Regarding the first prong of the test, the court stated:

"We have long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable. See *Rodriquez v. United States*, 395 U.S. 327, [23 L. Ed. 2d 340, 89 S. Ct. 1715] (1969); *cf. Peguero v. United States*, 526 U.S. 23, 28, 143 L. Ed. 2d 18, 119 S. Ct. 961 (1999) ('[W]hen counsel fails to file a requested appeal, a defendant is entitled to [a new] appeal without showing that his appeal would likely have had merit'). This is so because a defendant who instructs counsel to initiate an appeal reasonably relies upon counsel to file the necessary notice. Counsel's failure to do so cannot be considered a strategic decision; filing a notice of appeal is a purely ministerial task, and the failure to file reflects inattention to the defendant's wishes. At the other end of the spectrum, a defendant who explicitly tells his

attorney *not* to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently." *Flores-Ortega,* 528 U.S. at 477.

The facts in *Flores-Ortega* did not fall at either end of the spectrum; rather, the defendant had not given clear directions of whether to file an appeal. Under those circumstances, the Court refused to adopt a bright-line rule and concluded a case-by-case evaluation was necessary. The inquiry must begin with the question of whether counsel consulted with his or her client.

"If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal. [Citation omitted]. If counsel has not consulted with the defendant, the court must in turn ask a second, and subsidiary, question: whether counsel's failure to consult with the defendant itself constitutes deficient performance. That question lies at the heart of this case: Under what circumstances does counsel have an obligation to consult with the defendant about an appeal?" 528 U.S. at 478.

Noting that this question was unanswered under the facts, the Court moved to a discussion of the prejudice prong of the traditional *Strickland* test. Under the prejudice test of *Strickland,* as summarized by the *Flores-Ortega* Court, courts

" 'normally apply a "strong presumption of reliability" to judicial proceedings and require a defendant to overcome that presumption' [citations omitted] by 'show[ing] how specific errors of counsel undermined the reliability of the finding of guilt.' [Citation omitted.] Thus, in cases involving mere 'attorney error,' we require the defendant to demonstrate that the errors 'actually had an adverse effect on the defense.' [Citations omitted.]" 528 U.S. at 482.

The Court concluded that the traditional *Strickland* approach of applying a presumption of reliability did not apply when counsel failed to file an appeal.

"In some cases, however, the defendant alleges not that counsel made specific errors in the course of representation, but rather that during the judicial proceeding he was—either actually or constructively—denied the assistance of counsel altogether. 'The presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage.' [Citation omitted.] The same is true on appeal. [Citation omitted.] Under such circumstances, '[n]o specific showing of prejudice [is] required,' because 'the adversary process itself [is] presumptively unreliable.' [Citations omitted.]

"Today's case is unusual in that counsel's alleged deficient performance arguably led not to a judicial proceeding of disputed reliability, but rather to the forfeiture of a proceeding itself. According to respondent, counsel's deficient performance deprived him of a notice of appeal and, hence, an appeal altogether. Assuming those allegations are true, counsel's deficient performance has deprived respondent of more than a *fair* judicial proceeding; that deficiency deprived respondent of the appellate proceeding altogether . . . . [T]he complete denial of counsel during a critical stage of a judicial proceeding mandates a presumption of prejudice because 'the adversary process itself' has been rendered 'presumptively unreliable.' [Citation omitted.] The even more serious denial of the entire judicial proceeding itself, which a defendant wanted at the time and to which he had a right, similarly demands a presumption of prejudice. Put simply, we cannot accord any ' "presumption of reliability" ' [citation omitted] to judicial proceedings that never took place." *Flores-Ortega*, 528 U.S. at 483.

Under this line of authority, the federal courts have concluded that the right to a direct appeal of a criminal conviction "cannot effectively be replaced by a collateral prejudice assessment." *United States v. Snitz*, 342 F.3d 1154, 1157 (10th Cir. 2003). In other words, the collateral review sought by the State in this case and applied by the panel in *Swenson* would not occur under the *Flores-Ortega* line of cases; rather, prejudice would be presumed.

A presumption of prejudice is not the same, however, as finding prejudice per se. The *Flores-Ortega* Court rejected that position, stating:

"[A] *per se* prejudice rule ignores the critical requirement that counsel's deficient performance must actually cause the forfeiture of the defendant's appeal. If the defendant cannot demonstrate that, but for counsel's deficient performance, he would have appealed, counsel's deficient performance has not deprived him of anything, and he is not entitled to relief. [Citation omitted.] Accordingly, we hold that, to show prejudice in these circumstances, a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Flores-Ortega*, 528 U.S. at 484.

Considering this test in the context of the parties' arguments, it is apparent that the *Flores-Ortega* opinion, at a minimum, provides an example of the application of the presumptive prejudice test when counsel fails to perform at all and, arguably, provides support for application of such a test when counsel fails to file a petition for review.

There are, however, several considerations in determining whether *Flores-Ortega* should be applied in this case. First, *Flores-Ortega* dealt with a constitutional right to counsel at a critical stage of a proceeding. In contrast, this case involves a statutory right and one which, given the discretionary nature of whether the petition is granted or denied, would not be considered critical. See *Wainwright*, 455 U.S. at 587-88. Thus, some of the rationale and language of the *Flores-Ortega* decision is not applicable to this case.

Still, the critical distinction between *Flores-Ortega* and *Strickland* suggests that *Flores-Ortega*'s analysis is the more appropriate test to be applied in this case. That distinction is that *Flores-Ortega* applies when counsel's performance causes a *forfeiture* of a proceeding and *Strickland* applies when counsel's alleged deficient performance occurs *during the course* of a proceeding and the deficient performance renders the proceeding unfair. Regardless of whether the right to counsel is statutory or constitutional, when felony charges place liberty at issue, and there is a right to effective assistance of counsel at a specific stage of the proceeding that is forfeited because counsel failed to protect the defendant's right to the proceeding, the *Flores-Ortega* test applies.

The second consideration is that Kansas has never directly applied *Flores-Ortega* to determine whether an attorney was ineffective in failing to file an appeal. The decision has been cited in our cases but not in the same factual context that it arose. See *Bledsoe,* 283 Kan. at 94 (counsel's "performance falls short when measured against the yardstick of objective reasonableness"); *State v. Muriithi*, 273 Kan. 952, 962, 46 P.3d 1145 (2002) (noting that states are free to impose whatever specific rules they see fit to ensure that criminal defendants are well represented and that "[n]either the legislature nor the courts of this state have shown any inclination to deviate from the case-by-case reasonableness standard of *Strickland* and *Chamberlain* [*v. State*, 236 Kan. 650, 656-57, 694 P.2d 468 (1985)]").

Rather, Kansas has taken a somewhat different approach in dealing with a failure to file an appeal. In *State v. Ortiz*, 230 Kan. 733, 640 P.2d 1255 (1982), we recognized that in the interest of fundamental fairness an untimely appeal will be allowed in those cases

where a defendant was either: (1) not informed of his or her appellate rights; (2) not furnished with an attorney to perfect an appeal; or (3) furnished with an attorney for that purpose who failed to perfect and complete an appeal. 230 Kan. at 735-36 (relying on *Brizendine v. State*, 210 Kan. 241, 242-44, 499 P.2d 525 [1972]). If one of these exceptions applies, the traditional two-step *Strickland* analysis is not utilized.

Like the *Strickland* analysis, the *Ortiz* standard can, in limited circumstances, require a two-step process. The first step of the *Ortiz* analysis focuses upon the three exceptions and is applied in every *Ortiz* analysis. Under the second step, " 'A defendant properly informed of his appellate rights may not "let the matter rest" . . . and then claim that he did not waive his rights to appeal.' " 230 Kan. at 736 (quoting *Norris v. Wainwright*, 588 F.2d 130, 137 [5th Cir. 1979]). This showing is a type of prejudice requirement. In *Ortiz*, the defendant signed a written waiver of his right to appeal and he was, therefore, denied relief. 230 Kan. at 736.

Under different facts, however, a court must permit an appeal out of time if any of the narrow *Ortiz* exceptional circumstances are met and, when required, prejudice is established. See *State v. Phinney*, 280 Kan. 394, 404, 122 P.3d 356 (2005); *State v. Willingham*, 266 Kan. 98, 99-102, 967 P.2d 1079 (1998).

While this *Ortiz* standard has some similarities to the *Flores-Ortega* standard, there are also differences. These differences may be explained, in part, by the historical and precedential background of the cases and the difference in federal and Kansas rules of procedure. Historically, it is important to note that *Ortiz* was decided in 1982, 2 years before *Strickland*. The difference in precedent is, therefore, understandable. The *Ortiz* court cited this court's previous decision of *Brizendine*, 210 Kan. 241, as authority for the holding.

In *Brizendine*, the defendant was convicted by a jury of burglary. He subsequently told his attorney he wished to appeal the conviction, but due to some misunderstanding between client and counsel, no appeal was ever filed. The *Brizendine* court held that the defendant had the option of taking an appeal out of time due to his counsel's error. As support for this holding, *Brizendine* cited

"a number of federal cases involving similar factual situations where an accused was denied effective assistance of counsel thereby resulting in the denial of an appeal from a conviction. In each case the court held that an outright discharge of the prisoner was not proper but rather he was entitled to an opportunity to take an out-of-time appeal from his original conviction. (*Anders v. California,* 386 U.S. 738, 18 L. Ed. 2d 493, 87 S. Ct. 1396 [1967]; *Atilus v. United States,* 406 F.2d 694 [1969]; *Benoit v. Wingo,* 423 F.2d 880 [1970]; *Kent v. United States,* 423 F.2d 1050 [1970].)" *Brizendine,* 210 Kan. at 244.

Since 1972 when *Brizendine* was decided and even since 1982 when *Ortiz* was decided, federal cases have refined the analysis relating to ineffective assistance of counsel claims. Part of this refinement includes the adoption of the *Strickland* test in 1984 and application of the *Strickland* test to those *Anders*-type situations which served as the basis for the holding in *Brizendine.* See *Smith v. Robbins,* 528 U.S. 259, 145 L. Ed. 2d 756, 120 S. Ct. 746 (2000); see also *Anders v. California,* 386 U.S. 738, 744, 18 L. Ed. 2d 493, 87 S. Ct. 1396 (1967) (procedure allowing appellate counsel to withdraw upon filing letter stating that appeal had "no merit" and allowing appellate court to affirm conviction based upon a review of the record did not comport with fair procedure and lacked substantial equality required by the Fourteenth Amendment).

In contrast, Kansas cases applying *Ortiz* have remained steadfast to the analysis of *Ortiz* and the federal precedent existing at the time. Consistent with the pre-*Ortiz* federal jurisprudence, *Ortiz* combines rationales relating to the duties of counsel and the duties of judges. At the time many of the federal cases cited in *Brizendine* and *Ortiz* were decided, Fed. R. Crim. Proc. 32(a)(2) included language identical to K.S.A. 22-3424(5) (Weeks) (now K.S.A. 22-3424[f]). As we noted previously, K.S.A. 22-3424(f) states: "After imposing sentence in a case which has gone to trial on a plea of not guilty, the court shall advise the defendant of the defendant's right to appeal and of the right of a person who is unable to pay the costs of an appeal to appeal in *forma pauperis."* See also K.S.A. 2006 Supp. 22-4505(a) (trial court "shall inform the defendant of such defendant's right to appeal the conviction to the appellate court having jurisdiction and that if the defendant is financially unable to pay the costs of such appeal," the defendant may request appointed counsel).

*Ortiz* did not cite to these Kansas statutes, although both were in effect at the time. K.S.A. 22-3424 was enacted in 1970. See L. 1970, ch. 129, sec. 22-3424. Although there were minor amendments to K.S.A. 22-3424 in 1991, 1993, and 1995, since 1995 subsection (f) has remained the same. See L. 1995, ch. 257, sec. 3. K.S.A. 22-4505 was enacted in 1969. See L. 1969, ch. 291, sec. 5. The statute was amended in 1976, 1982, and 1997, but subsection (a) has remained substantially the same. More recently we have cited these statutes as a basis for the *Ortiz* holding. *E.g., Phinney,* 280 Kan. at 402; *Willingham,* 266 Kan. at 100.

In the meantime, federal procedure has diverged. Fed. R. Crim. Proc. 32(a)(2) is now limited to offenses committed before November 1, 1987. The change in procedural requirements may explain, at least in part, the divergence in case law; the federal cases have focused solely upon the obligations of counsel while Kansas cases continue to blend the discussion of the duties of counsel and the duties of judges in informing a defendant regarding the right to appeal. See *Willingham,* 266 Kan. at 100.

Kansas' loyalty to the *Ortiz* analysis is not contrary to federal jurisprudence, which does not require a lockstep approach as long as a state's procedures ensure that criminal defendants are well represented. *Flores-Ortega,* 528 U.S. at 479; *Muriithi,* 273 Kan. at 962. *Ortiz* ensures effective representation, allowing the filing of the appeal out of time and, as we have discussed, the divergence is in part due to different requirements of our state statutes.

This discussion of the *Strickland, Flores-Ortega,* and *Ortiz* tests frames the question before us: Will we apply the traditional *Strickland* test and require a showing that the result was affected by counsel's performance, the *Flores-Ortega* analysis, the *Ortiz* analysis, or will we find per se or structural error?

We conclude the traditional *Strickland* test should not be applied. As previously noted, *Strickland* is designed to deal with specific claims that counsel's performance during a proceeding was deficient. *Flores-Ortega* and *Ortiz* consider the claim in the context of a failure to preserve the right to a proceeding, *i.e.,* a complete forfeiture of a right. We agree with the federal court's analysis that

under such circumstances the collateral prejudice review required by *Strickland* does not provide an adequate remedy.

In considering whether to apply *Flores-Ortega* or *Ortiz*, we note that in a situation such as alleged here—where Kargus says he told counsel to file a petition for review—the tests applied in the two cases can lead to the same outcome. On the one hand, if the *Flores-Ortega* analysis was applied in this case, a court could find that appellate counsel's performance fell below an objective standard of reasonableness. This conclusion would be appropriate because, if counsel did not follow Kargus' directive, the failure to file a petition for review ended the direct appeal that Kargus wished to continue and deprived this court of jurisdiction to review the Court of Appeals' decision directly. To continue the direct appeal, K.S.A. 20-3018(b) requires that a petition for review be filed within 30 days of the Court of Appeals' decision, and Supreme Court Rule 8.03 (2006 Kan. Ct. R. Annot. 62) clarifies that the 30-day time period is jurisdictional. Because the 30-day deadline is jurisdictional, there cannot be a strategic reason to miss the deadline if this court's review is desired. See *State ex rel. Schmelzer v. Murphy*, 201 Wis. 2d 246, 548 N.W.2d 45 (1996) (counsel's conduct deficient for failing to submit petition for review before 30-day deadline which was jurisdictional).

As to the second prong of the test, *i.e.*, prejudice, if the decision in *Flores-Ortega* applies, Kargus would not have to show that ultimately his appeal would have been successful. Rather, there would be a presumption of prejudice.

On the other hand, under the *Ortiz* analysis, we would apply the third exception—Kargus alleges his attorney failed to complete the appeal. Based upon the statutory language providing that "[a]ny party aggrieved by a decision" of the Court of Appeals "may petition the supreme court for review within thirty (30) days after the date of such decision," K.S.A. 20-3018(b), if Kargus asked his attorney to file the petition, he had a right to have counsel comply with that request. His request to file the petition and his attorney's failure to do so would satisfy the *Ortiz* prejudice requirement.

As this analysis indicates, the two lines of cases agree that when a defendant, such as Kargus, has directed a filing and counsel fails

to follow that direction, counsel's performance deviates from an objective standard of reasonableness. Under either test, if the evidence supports Kargus' allegation that he requested the filing of a petition for review, he would have established ineffective assistance of counsel. Additionally, the two cases intersect at the stage of the prejudice analysis—a showing that Kargus would have filed the petition for review is sufficient to establish prejudice under either *Flores-Ortega* or *Ortiz*' test.

If, however, on remand the evidence at a hearing shows that there was not clear direction from Kargus or there is no evidence of any communication between Kargus and counsel regarding the petition for review, which of the two tests should apply?

Application of *Ortiz* in such a situation is problematic. As discussed, the rationale for *Ortiz* is based largely on the statutory requirements that a defendant be informed by the court of his or her right to appeal. We have never extended that requirement to mean that a sentencing judge must explain appellate procedure, including the right to file a petition for review if appellate jurisdiction is initially vested in the Court of Appeals and the results of the Court of Appeals' decision are adverse to the defendant. We do not intend by this decision today to impose that duty.

Additionally, however, *Ortiz* does relate to counsel's failure to perfect and complete the appeal. In this regard, we do not find it appropriate to extend the third *Ortiz* exception—where counsel fails to complete an appeal—to mean that a petition for review must be filed automatically in all cases in which an appeal has been taken. Although we have held that the petition is part of the appeal process and a segment of that process to which parties aggrieved by a Court of Appeals' decision may avail themselves, the petition for review phase is a different stage of the appeal and many considerations must be taken into account in the determination of whether to file a petition for review. If we were to extend the third exception of completing an appeal to require an automatic filing of a petition for review, we would, in effect, be saying a structural error had occurred. We have never found the failure to file an appeal to be structural error; given that consideration, there would be no basis to reach that conclusion with regard to a particular

phase of an appeal. Therefore, *Ortiz* provides no guidance on how to deal with any situation other than, arguably, where counsel failed to follow directions to file the petition for review.

The *amicus curiae* and Kargus suggest an alternative to fill the void: find the conduct per se unreasonable. Although made in the context of a prejudice argument, the argument suggests the failure to file a petition is per se unreasonable because a prisoner's state remedies are not exhausted and, as a result, federal habeas relief is unavailable. It is this exhaustion requirement that the Court of Appeals panel relied upon to find prejudice when applying a traditional *Strickland* analysis.

The exhaustion requirement arises from 28 U.S.C. § 2254(b)(1)(A) (2000) which limits the availability of relief to cases where the applicant has exhausted state remedies or 28 U.S.C. § 2254(b)(1) "(B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant."

Although there are cases applying the narrow exceptions recognized in 28 U.S.C. § 2254(b)(1)(B), federal courts generally do not grant an application for relief under 28 U.S.C. § 2254 unless the applicant has exhausted the remedies available in the state courts. See *Coleman v. Thompson*, 501 U.S. 722, 731, 115 L. Ed. 2d 640, 111 S. Ct. 2546 (1991). Claims asserted in a petition under § 2254 are exhausted if the petitioner "fairly presented" the claims to each level of the state courts. *E.g., Lines v. Larkins*, 208 F.3d 153, 159 (3d Cir. 2000); *Parkhurst v. Shillinger*, 128 F.3d 1366, 1368 (10th Cir. 1997); see also *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45, 144 L. Ed. 2d 1, 119 S. Ct. 1728 (1999) (recognizing exhaustion requirement of 28 U.S.C. § 2254 as a rule of comity, designed to permit state courts to have a fair opportunity to address their alleged violation of federal constitutional law before those errors are considered by the federal courts); *Peterson v. Lampert*, 319 F.3d 1153, 1159 (9th Cir. 2003) (citing *Picard v. Connor*, 404 U.S. 270, 275, 30 L. Ed. 2d 438, 92 S. Ct. 509 [1971]) (same); *Ex Parte Royall*, 117 U.S. 241, 251-52, 29 L. Ed. 868, 6 S. Ct. 734 [1886]) (same); *Moore v. Quarterman*, 454 F.3d 484, 491 (5th Cir.

2006) (exhaustion requirement is not jurisdictional but reflects policy of federal-state comity).

These authorities give credence to Kargus' argument. His argument, however, ignores that there are exceptions to the exhaustion requirement, albeit narrow ones. Where exceptions exist, it is inappropriate to adopt a per se rule.

These conclusions bring us back full circle to the need for a determination of what is objectively reasonable conduct of counsel at the petition for review stage of the proceeding. *Flores-Ortega* provides a measuring stick for that determination; *Ortiz* does not. Consequently, we conclude the *Flores-Ortega* test provides a framework to be applied here.

We hold that when a claim is made that counsel was ineffective for failing to file a petition for review following a negative outcome in a direct appeal from a felony conviction and sentence, the standards or test to be applied are: (1) If a defendant has requested that a petition for review be filed and the petition was not filed, the appellate attorney provided ineffective assistance; (2) a defendant who explicitly tells his or her attorney not to file a petition for review cannot later complain that, by following instructions, counsel performed deficiently; (3) in other situations, such as where counsel has not consulted with a defendant or a defendant's directions are unclear, the defendant must show (a) counsel's representation fell below an objective standard of reasonableness, considering all the circumstances; and (b) the defendant would have directed the filing of the petition for review. A defendant need not show that a different result would have been achieved but for counsel's performance.

To avoid the difficulties of proof inherent in the determination of which of these three categories applies, we strongly urge counsel to follow the teaching of K.A.R. 105-3-9(a)(3) which directs counsel to "file notice of appeal in a timely manner, unless a waiver of the right to appeal has been signed by the defendant." The guidance, although not directly applicable, is sound: Written communications document the exchange between counsel and the defendant. It would be prudent for counsel to document any such exchange regarding filing of a petition for review.

## *Remand*

In this case we have no idea if there is written communication or any communication. No evidence has been presented and no findings of fact have been made. Consequently, the test we adopt today cannot be applied on the record before us. Typically, such a situation would cause us to remand the case so that the district court can conduct a hearing.

Before we remand the case, however, we must determine whether the district court could grant the relief requested by Kargus. Kargus argues that once he establishes that he requested counsel to file a petition for review, the district court has the power to grant relief under a K.S.A. 60-1507 motion and, in doing so, grant jurisdiction to allow the filing of a petition for review within 30 days of the district court's ruling. This remedy would be consistent with the remedy allowed in *Ortiz* for out-of-time direct appeals. See 230 Kan. at 735. Ortiz obtained the remedy by filing a motion pursuant to K.S.A. 60-1507. See also *State ex rel. Schmelzer v. Murphy*, 201 Wis. 2d 246, 258, 548 N.W.2d 45 (1996) (on claim of ineffective assistance of counsel in filing for discretionary review, relief granted in case; denied retroactively to other defendants in similar circumstances). We conclude, therefore, that the relief should be granted to Kargus and to the defendant in the companion case *Swenson v. State*, No. 94,207, this day decided. We do not reach the question of application of this decision to other defendants.

To implement the holdings of this decision, this case is remanded for an evidentiary hearing. If on remand the district court determines that Kargus has established ineffective assistance of counsel, the district court should allow counsel 30 days in which to file a petition for review from the Court of Appeals' unpublished decision filed June 2, 2000. See *Ortiz*, 230 Kan. at 735.

Judgment of the Court of Appeals reversing the district court is affirmed. Judgment of the district court is reversed and remanded with directions.

JOHNSON, J., not participating.
BRAZIL, S.J., assigned.